**In re:  RITE AID CORPORATION SECURITIES LITIGATION**

**This Document Relates To: ALL ACTIONS.**

**No. MDL 1360. Master File No. 99–1349.**

United States District Court, E.D. Pennsylvania.

March 24, 2005.

Carole A. Broderick, Robin Switzenbaum, Sherrie R. Savett, Stuart J. Guber, Berger & Montague, P.C., Robert P. Frutkin, Law Offices Bernard M. Gross PC, Justin K. Miller, Marvin Larsson Henkin & Scheuritzel, Peter F. Marvin, Marvin & Henkin, Philadelphia, PA, David J. Bershad, Robert P. Sugarman, William C. Fredericks, Steven G. Schulman, Milberg Weiss Bershad Hynes & Lerach LLP, Ira M. Press, Roger W. Kirby, New York City, William E. Johnson, William E. Johnson Law Offices, Los Angeles, CA, for Plaintiffs.

Alan J. Davis, William A. Slaughter, Ballard Spahr Andrews & Ingersoll LLP, James J. Rodgers, Dilworth Paxson L.L.P., David M. Howard, Dechert LLP, William M. McSwain, U.S. Attorney's Office, John E. Caruso, John W. Frazier, IV, Montgomery McCracken Walker & Rhoads LLP, Philadelphia, PA, Douglas B. Adler, Skadden Arps Slate Meagher & Flom, Los Angeles, CA, William H. Jeffress, Catherine Botticelli, Wallace L. Timmeny, Dechert Price & Rhoads, Washington, DC, Allison J. Ross, John R. Oller, Joseph T. Baio, Michael R. Young, Rachel J. Fremmer, Richard L. Klein, Tariq Mundiya, Willkie Farr & Gallagher, New York City, for Defendants.

Dennis J. Johnson, Johnson & Perkinson, South Burlington, VT, for Movants.

Michael M. Baylson, Duane Morris LLP, Philadelphia, PA, pro se.

## MEMORANDUM

DALZELL, District Judge.

Nearly two years ago, we awarded to class counsel for plaintiffs attorneys fees equal to twenty-five percent of the $126,641,315.00 Settlement Fund that their "extraordinarily deft and efficient" representation made possible. *See In re Rite Aid Sec. Litig.*, 269 F.Supp.2d 603, 611 (E.D.Pa.2003) [hereinafter *Rite Aid II* ]. Although we recognized that the award was indeed "handsome," we nevertheless found that it was "in all respects reasonable under the *Gunter–Prudential* factors." *Id.* at 611; *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000); *In re Prudential Ins. Co. Sales Practices Litig.*, 148 F.3d 283, 336–40 (3d Cir.1998).

To confirm the reasonableness of the twenty-five percent award, we performed a lodestar cross-check. *See generally In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir.2001) (exemplifying the cross-check analysis) [hereinafter *Cendant PRIDES* ]. Consistent with our reading of *Cendant PRIDES,* we used a "top hourly rate that blends the rates of the seniormost lawyers at the firms of co-lead counsel" to arrive at a lodestar multiplier of 4.07. *Rite Aid II*, 269 F.Supp.2d at 611 n. 10. Similar multipliers appeared to be "fairly common," so the multiplier did not affect our conclusion that a twenty-five percent award was reasonable. *See id.* at 611. Walter Kaufmann, one of the two objectors to the motion of plaintiffs' coun-

sel for attorneys' fees, took issue with our decision and appealed.

"In all respects but one," the Court of Appeals held that *Rite Aid II's* analysis was "exemplary." *In re Rite Aid Sec. Litig.*, 396 F.3d 294, 296 (3d Cir.2005) [hereinafter *Rite Aid III* ]. The court recognized that the "percentage-of-recovery method is generally favored in common fund cases" and noted that district courts should place "primary reliance on the percentage of common fund method." *Id.* at 300, 307. Moreover, it held that we did not abuse our discretion in applying the *Gunter–Prudential* factors. *Id.* at 302–305.

The only error that the Court of Appeals found in *Rite Aid II* was our use of "the billing rates of only the most senior partners of plaintiffs' co-lead counsel" in calculating the lodestar multiplier. *Id.* at 306. Notably, the court did not hold that we erred in approving a fee award with a multiplier of 4.07. In fact, it carefully emphasized that multipliers "need not fall within any pre-defined range, provided that the District Court's analysis justifies the award." *Id.* at 307. Suggesting that "[c]onsideration of multipliers used in comparable cases may be appropriate," *id.* at 307 n. 17, the Court of Appeals vacated our decision and remanded the case for further proceedings consistent with its opinion, *id.* at 308. In short, we understand *Rite Aid III* to require us to reconsider the reasonableness of a twenty-five percent fee award after performing a lodestar cross-check consistent with its refinement of *Cendant PRIDES*. *Id.* at 306–07.

The lodestar multiplier equals the proposed fee award divided by the product of the total hours worked by class counsel and "blended billing rates that approximate the fee structure of all the attorneys who worked on the matter."[1] *Id.* at 306. Here, plaintiffs' counsel has proposed a fee award of twenty-five percent of the $126,641,315.00 Settlement Fund, or $31,660,328.75. Although the Court of Appeals generally permits the use of blended rates to approximate the mathematical precision of a traditional lodestar calculation, *see supra* note 1, plaintiffs' counsel already has undertaken that burdensome task and computed the loadstar as $4,549,824.75.[2] *See* Pls.' Compendium of Law Firm Affs. Because we have at our disposal this relatively precise lodestar calculus, we find it unnecessary to attempt another calculus that could only yield a less precise approximation. Based on the $31,660,328.75 proposed fee award and the $4,549,824.75 lodestar, we conclude that plaintiffs' counsel requests approval of a fee award with a 6.96 multiplier.

Having computed the multiplier, we must now consider whether the twenty-five percent award is unreasonably large and must be reduced. Plaintiffs' counsel and

**1.** We read the Court of Appeals's approval of "blended rates" in conjunction with its recognizing that the "lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *Rite Aid III, 396* F.3d at 306. A traditional lodestar calculation would require the court to monetize the value of the work that each lawyer expends on a case (by multiplying the number of hours that she worked by her hourly rate) and then to arrive at the "lodestar" by summing the values of each lawyer's contribution. This sort of "bean-counting" becomes unnecessary if the court approximates the lodestar by simply multiplying an appropriate "blended rate" and the total number of hours worked by all class counsel. Our error in *Rite Aid II* occurred in "blending" only the rates of the most senior attorneys when we should have "blended" the rates of all attorneys.

**2.** No one has challenged the accuracy of this calculation. Indeed, any objection would be pointless because we need not validate the calculation with "mathematical precision."

the objectors[3] cite a bevy of allegedly "comparable" cases, but the facts of *this* case, where counsel obtained a nine-figure settlement of a securities class action mostly from an auditor, are undeniably unique. As plaintiffs' counsel stated at the hearing, auditors are rarely defendants in securities class actions; no more than six percent of the securities class actions filed in 2003 and 2004 even named auditors as defendants.[4] Among this rare breed, this case appears to involve the largest class recovery on record against an auditor in a 10b–5 action, a fact no one at the hearing contested. Moreover, plaintiffs' counsel obtained these unprecedented results without relying on the fruits of any official investigation.

We have twice before discussed the uniqueness of this case at length, *see Rite Aid II; see also In re Rite Aid Sec. Litig.*, 146 F.Supp.2d 706, 734–37 (E.D.Pa.2001) [hereinafter *Rite Aid I*], and we need not repeat that exposition again here. Suffice it to say that, through the exercise of their considerable skill, plaintiffs' counsel obtained a historic recovery for the class in a rare and complex kind of case where victory at trial would have been, at best, remote and uncertain.[5]

In conclusion, our recalculation of the multiplier does not alter our original conclusion. Upon consideration of the entire record, including evidence that the class members recovered only a fraction of their losses, we conclude that it is reasonable to award attorneys' fees equal to twenty-five percent of the Settlement Fund.

An appropriate Order follows.

### ORDER

AND NOW, this 24th day of March, 2005, upon consideration of *In re Rite Aid Sec. Litig.*, 396 F.3d 294 (3d Cir.2005), class counsel's memorandum in support of renewed motion for award of attorneys' fees, the declaration of Sherrie Savett and David Bershad in support of renewed motion for award of attorneys' fees, objection Walter Kaufmann's opposition to class counsel's renewed motion for award of attorneys' fees, the letter briefs of the Pennsylvania Public School Employees' Retirement System and the New York State Teachers' Retirement System, and plaintiffs' counsel's epistolary reply thereto, and for the reasons set forth in the accompanying Memorandum and *In re Rite Aid Sec. Litig.*, 269 F.Supp.2d 603 (E.D.Pa.2003), it is hereby ORDERED as follows:

1.  All objections are OVERRULED;

2.  The renewed motion for award of attorneys' fees is GRANTED;

3.  Plaintiffs' counsel are AWARDED attorneys' fees in the amount of $31,660,328.75 (the "Fee Award"), which

---

3. Walter Kaufmann filed a formal brief in opposition to plaintiffs' counsel's renewed motion for award of attorneys' fees (docket entry # 196), and the Pennsylvania Public School Employees' Retirement System and the New York State Teachers' Retirement System filed informal letter briefs. Though we have considered all of these documents, only Kaufmann's submission is part of the record because only he filed it with the Clerk.

4. Because auditors can always claim that they relied in good faith on the representations of a corporation's officers, it seems likely that many of the 10b–5 claims initially asserted against auditors are dismissed without need for trial.

5. It is again worth stressing that the settlement here also involved these defendants' withdrawal of their appeal of *Rite Aid I*. *Rite Aid I* involved a host of complex legal issues, including many of first impression, and thus this second settlement assured the finality of the first. Though not subject to dollar valuation, this aspect of the settlement should not be overlooked or minimized.

constitutes twenty-five percent of the Settlement Fund of $126,641,315.00;

4. Plaintiffs' counsel are AWARDED reimbursement for expenses incurred in the prosecution and settlement of this action in the amount of $290,086.00 ("Expense Award");

5. Plaintiffs' counsel are further AWARDED interest on the Fee Award and the Expense Award at the same rate as earned by the Settlement Fund from May 30, 2003 through the date of payment; and

6. There is no just reason for delay in the entry of judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, and the Clerk is hereby directed to enter judgment in accordance with this Order.